# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| BRIANNE DRESSEN, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action 3:23-cv-155 |
| | § | |
| ROB FLAHERTY, White House | § | |
| Director of Digital Strategy, in his | § | |
| official and individual capacities; *et al.*, | § | |
| | § | |
| Defendants. | § | |

## INDIVIDUAL DEFENDANTS XAVIER BECERRA, VIVEK MURTHY, CAROL CRAWFORD, ALEJANDRO MAYORKAS, AND JEN EASTERLY'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Qualified immunity protects government officials from liability absent a clearly established constitutional or statutory violation. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Whether qualified immunity shields an official action is "assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson v. Callahan*, 555 U.S. 223, 244 (2009). Here, "Plaintiffs concede that under governing Fifth Circuit precedent, 'only conspiracies actionable under Section 1985(3) are those motivated by racial animus.'" ECF 103 at 44 (quoting *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir 2019)). They allege no such animus and seek only to "preserve their argument that the Fifth Circuit's approach must be reconsidered." *Id.* No matter how the Fifth Circuit might rule in a future case, that cannot clearly establish the law here. *See Brosseau v. Haugen*, 543 U.S. 194, 200 n.4 (2004) (per curiam) (cases "that postdate the conduct in question" cannot give "fair notice" of what is unlawful and "and are of no use in the clearly established inquiry"). That is sufficient to end this case against Defendants Becerra, Murthy, Crawford, Mayorkas, and Easterly. There is no need for the Court to go any further, and certainly no need to order burdensome jurisdictional discovery when it is this clear these Defendants are immune from suit.

## ARGUMENT

### I.    Plaintiffs Do Not Allege a Clearly Established Section 1985(3) Claim.

As noted above, Plaintiffs fail to allege racial animus, as required to state a Section 1985(3) claim in the Fifth Circuit. But Plaintiffs further fail to allege that Defendants had *any* class-based, invidiously discriminatory animus. Rather, Plaintiffs argue that because they allege their First Amendment rights were violated "based on

1

viewpoint (as well as physical disability)" the alleged "conduct falls squarely within the ambit of § 1985(3)." ECF 103 at 47. Plaintiffs cite no body of law clearly establishing this theory. Indeed, the Supreme Court case they cite (*United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*) leaves open whether Section 1985(3) applies to any "conspiracies aimed at any class or organization on account of its political views or activities." 463 U.S. 825, 837 (1983). But even if Section 1985(3) did cover political viewpoint discrimination, the facts alleged here would not state an actionable claim. As Defendants have explained, the Fifth Circuit has rejected any theory of Section 1985(3) liability which relies on defining the relevant class "as all those who are not of the same class as the conspirators" or "do not agree" with the conspirators. *Roe v. Abortion Abolition Soc'y*, 811 F.2d 931, 935 (5th Cir. 1987). That is precisely what Plaintiffs do here. And Plaintiffs do not allege any facts to support their contention that the Defendants engaged in conduct "directed specifically at" disabled individuals "as a class." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 270 (1993).

Plaintiffs' arguments that Defendants are not entitled to qualified immunity are similarly misplaced. Plaintiffs assume that they can overcome qualified immunity for their *statutory* claims by showing that Defendants violated their clearly established *constitutional* rights, ECF 103 at 53–58, but that is not correct. Federal employees are entitled to qualified immunity where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. That means – as the Supreme Court has taught with respect

2

to the very statute at issue here (42 U.S.C. § 1985(3)) – if the law is unclear with respect to *either* the application of a statute *or* a relevant constitutional provision, qualified immunity applies. *Ziglar v. Abbasi,* 582 U.S. 120, 154 (2017). Thus, *Abbasi* held that the defendants there would be entitled to qualified immunity on the Section 1985(3) claim even if the underlying constitutional allegations were otherwise well pleaded, because it was not clear whether the conspiracy element of § 1985(3) had been met. *Id.* at 150.

Plaintiffs identify no precedent establishing that Defendants' alleged conduct violated Section 1985(3). Most of the cases they rely upon only address the First Amendment, not Section 1985(3). ECF 103 at 55–56. The exception, *Burrell v. Board of Trustees of Georgia Military College*, 970 F.2d 785 (11th Cir. 1992), held that qualified immunity was *never* available to public officials in Section 1985(3) cases. But the Eleventh Circuit has since recognized that *Burrell*'s holding on this point was abrogated by *Abbasi*. *Chua v. Ekonomou*, 1 F.4th 948, 956 (11th Cir. 2021). There is no question qualified immunity applies in Section 1985(3) cases, *McKee v. Lang*, 393 F. App'x 235, 238 (5th Cir. 2010), and Plaintiffs have not met their burden to overcome it.[1]

Even when discussing their purported clearly established constitutional rights, Plaintiffs largely rely on cases which post-date the alleged conduct here. ECF 103 at 38–39 (citing *Murthy v. Missouri*, 603 U.S. 43, 79 (2024) (dissenting opinion); *Missouri*

---

[1] In response to another party's argument, Plaintiffs concede the law is not clear whether Section 1985(3) even applies to deprivations under color of federal law in the Fifth Circuit. ECF 103 at 51–52. That admission underscores the unsettled nature of the law here and supports the argument that Defendants did not violate any clearly established right under Section 1985(3).

*v. Biden*, 83 F.4th 350, 392 (5th Cir. 2023); *Missouri v. Biden*, 680 F. Supp. 3d 630, 641 (W.D. La. 2023)). But the right must be clearly established at the time of the defendant's conduct, not after the fact. *Brosseau*, 543 U.S. at 200 n.4. And the pre-conduct cases cited by Plaintiffs – *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 72 (1963) (involving limitations on the regulation of obscene materials); *Norwood v. Harrison*, 413 U.S. 455, 463 (1973) (asking whether states may "provide tangible assistance" to discriminatory private schools) – are so factually dissimilar as to provide no meaningful guidance "in the particular circumstances" confronted by Defendants. *D.C. v. Wesby*, 583 U.S. 48, 63 (2018).

Plaintiffs' arguments on conspiracy fare no better. As explained in the motion to dismiss, Plaintiffs' allegations are insufficient to show that Defendants entered into a conspiracy. ECF 94 at 18–20. Plaintiffs' reliance on a single, out-of-circuit district court case with wildly dissimilar facts – *Lee v. Christian*, 98 F. Supp. 3d 1265 (S.D. Ga. 2015) – only underscores that, at the very least, it was not clearly established that Defendants' alleged conduct rose to the level of a conspiracy under Section 1985(3).

In sum, Defendants are entitled to qualified immunity, and this Court should dismiss Defendants from this case under Rule 12(b)(6).

## II.    Plaintiffs Fail to Sufficiently Plead Personal Jurisdiction.

This Court also lacks personal jurisdiction. Indeed, the first amended complaint mentions the word "Texas" only twice: one plaintiff resides there, ECF 42 ¶ 10; and he occasionally spoke there, *id.* ¶ 608. There is no allegation any Defendant "traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to"

Texas. *Walden v. Fiore*, 571 U.S. 277, 289 (2014). Plaintiffs contend that because an "effort to suppress speech across platforms used by millions of Americans" included a few Texans, ECF 103 at 5, Defendants should have reasonably anticipated being hauled into court there (and every other state too). That is not the law. Numerous courts have held that the fact that federal government officials enforce federal laws and policies on a nationwide basis is insufficient in and of itself to maintain personal jurisdiction over them personally in each and every state. ECF 94 at 10 (collecting cases).

Plaintiffs respond they have evidence Texans were targeted: President Biden mentioned Texas twice in the course of his presidency, ECF 103 at 5, the National Health Institute once funded a University of Texas study, *id.* at 5 n.4, one former White House official mentioned Texas in a few tweets, *id.* at 5–6, and another former White House official is cited in an 881-page house report for referencing Texas once (in that same reference, he also mentions Maryland, Ohio, New York, Virginia, Michigan, and Indiana), *id.* at 10 n.16. Referencing a forum state in a tweet, press release, or meeting is not a "contact" with the forum state, let alone a relevant one giving rise to the alleged injuries in this case. *See Johnson v. TheHuffingtonpost.com, Inc.*, 21 F.4th 314, 319 (5th Cir. 2021) ("For specific jurisdiction, . . . we look only to the contact out of which the cause of action arises.") (citation omitted).[2]

---

[2] Many of these alleged "contacts" are taken out of context. For example, Plaintiffs quote President Biden as "blaming Texas and Florida for one third of all new COVID-19 cases in the entire country due to vaccine-related misinformation." ECF 103 at 5 n.3. In the quoted remarks, President Biden did note that Texas and Florida accounted for one third of all new

Further, none of this says anything about whether Defendants Becerra, Murthy, Crawford, Mayorkas, or Easterly directed *their* activities toward Texas, which is the relevant inquiry. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (the test for personal jurisdiction must be met "as to each defendant"). The opposition brief does not identify a single contact between Defendants Murthy, Crawford, and Mayorkas and Texas. As for Defendant Easterly, the best Plaintiffs can muster is that two Texans were appointed to the 23-member Cybersecurity Advisory Committee. ECF 103 at 9–10. That is not a "contact" between Defendant Easterly and Texas, let alone a relevant one giving rise to the alleged injuries in this case. *See Walden*, 571 U.S. at 286 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State.") (citation omitted).

That just leaves Defendant Becerra. Plaintiffs note that during Becerra's tenure as HHS Secretary, subcomponents of his agency awarded three grants to third parties in Texas aimed at combating Covid misinformation – Plaintiffs say it was four, but one was approved during his predecessor's tenure. ECF 103 at 8. But personal jurisdiction does not exist over an agency head simply because of his oversight and supervisory responsibilities. *Hill v. Pugh*, 75 F. App'x 715, 719 (10th Cir. 2003) ("It is

---

COVID-19 cases at the time. Some 50 lines earlier, President Biden opened his remarks with "Now, I know there's a lot of misinformation out there." Through a creative use of splicing, Plaintiffs combine the two quotes out of context to make it sound like President Biden was blaming Texas for spreading vaccine misinformation.

not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state."); *Wag-Aero, Inc. v. United States*, 837 F. Supp. 1479, 1486 (E.D. Wis. 1993) ("If a federal agency head could be sued personally in any district within his or her official authority merely for supervising acts of subordinates . . . the minimum contacts requirement would be rendered meaningless."). Moreover, the alleged injuries in this case did not arise out of these grants and there is no allegation Defendant Becerra had anything to do with them.[3]

Plaintiffs attempt to sidestep the absence of any contacts by Becerra, Murthy, Crawford, Mayorkas, and Easterly with Texas by arguing the conspiracy allegations are sufficient to establish personal jurisdiction over all defendants. ECF 103 at 15–16. That is not the law in the Fifth Circuit: "[Plaintiffs] appear to believe that their civil conspiracy claim is enough to establish personal jurisdiction over all of the defendants. There is no authority from this court supporting [that] belief." *Chow v. United States*, No. 20-30503, 2021 WL 3438365, at *2 (5th Cir. Aug. 5, 2021); *see also Rusesabagina v. GainJet Aviation S.A.*, No. 20-1422, 2024 WL 3242283, at *6 n.4 (W.D. Tex. June 27, 2024) ("As the court has discussed at length, however, the Fifth Circuit does not recognize a 'conspiracy theory' of personal jurisdiction. It is not enough to allege that a defendant was part of a larger conspiracy directed at a particular resident of a state.").

---

[3] In Fiscal Year 2023 alone, HHS issued 33,932 grants. *See Department of Health and Human Services (HHS)*, USASpending.gov (Sept. 29, 2023), https://www.usaspending.gov/agency/department-of-health-and-human-services?fy=2023. Plaintiffs surely are not suggesting Defendant Becerra was personally involved in each one.

The citation to *Mississippi Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003 (5th Cir. 1982), is inapposite. ECF 103 at 15–16. There, the defendants conspired to enter into a contract with a Mississippi company with intent to retain the company's services for nothing. *Mississippi Interstate Express, Inc.*, 681 F.2d at 1011. The court held that personal jurisdiction existed over all three defendants even though only one reached out to the Mississippi company to negotiate the contract. *Id.* Plaintiffs fail to mention, however, that one defendant had a controlling interest in the other two corporate defendants, and that was the basis for finding a prima facie case for personal jurisdiction over all three defendants. *Id.*

Plaintiffs focus on Stanford's "Virality Project" to support their contention that Defendants "repeatedly monitored and flagged Texas speech for censorship." ECF 103 at 6. However, the cited paragraphs in the first amended complaint make no mention of Texas at all. And the other "evidence" falls short. For example, the Google Document hyperlinked at the top of Exhibit G (ECF 103-8) shows that out of over 500 posts from across the country on a variety of topics from election misinformation to vaccine misinformation, the Virality Project only flagged *four* originating out of Texas. *Id.* at 7. That four Texans felt the effects of this alleged nationwide policy in Texas is no more relevant than the fact that a plaintiff felt the effects there too. *Walden*, 571 U.S. at 290 ("[M]ere injury to a forum resident is not a sufficient connection to the forum.").

A thorough review of same Google Document illustrates something more revealing. Those four posts were not flagged because they were of Texan origin; they

8

were flagged because each went viral.[4] And that really gets to the crux of this issue. At best, Plaintiffs allege there was a nationwide policy to flag viral posts that contained vaccine misinformation and four of them (out of over 500) so happened to originate in Texas. That is the kind of "random, fortuitous, or attenuated" contact that does not give rise to personal jurisdiction. Plaintiffs simply have nothing to support the allegation that Texans were specifically targeted by anyone, let alone by Becerra, Murthy, Crawford, Mayorkas, or Easterly. Nor is there anything to support the allegation that these defendants coerced anyone to target Texans. Without more, Plaintiffs fail to establish a prima facie case for personal jurisdiction. And Plaintiffs are certainly not entitled to jurisdictional discovery so they can engage in some kind of fishing expedition to see if the word "Texas" ever appears anywhere in a government communication involving misinformation about COVID. *See Johnson*, 21 F.4th at 326 ("Having failed to plead an adequate basis for our jurisdiction, Johnson asks us to let him fish for facts to support it. We will not. . . . We will not authorize a jurisdictional fishing expedition based on a plaintiff's general averments that more discovery will prove our jurisdiction.") (internal quotations and citation omitted).[5]

---

[4] Viral was defined in the Google Document as having over 10k "likes" or "engagements."

[5] Plaintiffs note Judge Doughty permitted jurisdictional discovery in two cases on similar facts—*Missouri v. Biden*, No. 22-1213 (W.D. La.), and *Hines v. Stamos*, No. 23-571 (W.D. La.), (Doughty, J.). In the first case, discovery was limited to the issue of standing. In the second case, discovery was allowed only as to the Stanford Defendants based on allegations they assigned analysts specifically to Louisiana, determined whether speech originated in Louisiana, tracked speech spread from Louisiana, and communicated with Louisiana officials about supposed disinformation. *See* Order, *Hines v. Stamos*, No. 23-571 (W.D. La. Dec. 18, 2024), at 6 (ECF 131). No such allegations exist here and certainly not with respect to Defendants Becerra, Murthy, Crawford, Mayorkas, or Easterly.

### III.    The Request for Injunctive Relief should be Dismissed.

Plaintiffs do not respond to the argument that they cannot seek injunctive or equitable relief against a federal officer in his individual capacity where the relief requires official government action, particularly those who have left government service. ECF 94 at 22. That is sufficient to dismiss the request for such relief as against Defendants Becerra, Murthy, Crawford, Mayorkas, and Easterly. They also lack standing to seek such prospective relief. Plaintiffs claim they remain under the threat of censorship because "[a]ll it takes is a change in administration or a shift in personnel for the Government to revert to the same conduct that unlawfully silenced Plaintiffs." ECF 103 at 34. For purposes of standing, the threat of injury must be actual or imminent, not speculative about what a future administration might do some day down the road. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992); *City of Los Angeles v. Lyons*, 461 U.S. 101, 101–08 (1983).

### CONCLUSION

For all these reasons, the motion to dismiss should be granted.

DATED: June 3, 2025                    Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

C. SALVATORE D'ALESSIO, Jr.
Director, Torts Branch

ANDREA W. MCCARTHY
Deputy Director

/s/ Paul Quast

10

SIEGMUND F. FUCHS
Senior Trial Attorney
PAUL QUAST
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
P.O. Box 7146
Washington, D.C. 20044
(202) 616-4150 (phone)
(202) 616-4314 (fax)
E-mail: paul.c.quast@usdoj.gov

*Attorneys for Xavier Becerra, Vivek Murthy, Carol
Crawford, Alejandro Mayorkas, and Jen Easterly
in their individual capacities*

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 5.3, I hereby certify that on June 3, 2025, I served the foregoing on all counsel of record electronically by means of the Court's CM/ECF system.

/s/ Paul Quast
PAUL QUAST