UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| Brianne Dressen, *et al.*, | § | |
| | § | |
| Plaintiffs*,* | § | |
| | § | |
| v. | § | |
| | § | 3:23-cv-155 |
| Robert Flaherty, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## ANDREW M. SLAVITT'S OBJECTIONS TO THE MEMORANDUM AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Eva M. Guzman
Texas Bar No. 00000097
Raffi Melkonian
Texas Bar No. 24090587
Michael Adams-Hurta
Texas Bar No. 24097860
**WRIGHT CLOSE**
**BARGER & GUZMAN, LLP**
One Riverway, Suite 2200
Houston, Texas 77056
Tel. 713.572.4321
Fax 713.572.4320
guzman@wrightclosebarger.com
melkonian@wrightclosebarger.com
hurta@wrightclosebarger.com

Theodore J. Boutrous Jr.
**Attorney in Charge**
Admitted *pro hac vice*
Michael H. Dore
Admitted *pro hac vice*
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071
Tel. 213.229.7000
Fax 213.229.7520
tboutrous@gibsondunn.com
mdore@gibsondunn.com

*Attorneys for Defendant Andrew M. Slavitt*

Defendant Andrew M. Slavitt files these Objections to the Memorandum and Recommendation of the United States Magistrate Judge (the "M&R") under Federal Rule of Civil Procedure 72(b)(2) per the deadline set by this Court's Order of December 11, 2025. Dkt. 114.

## OBJECTIONS

The M&R correctly states that all official capacity claims against Slavitt "are no longer justiciable" because he no longer holds his position at the White House. Dkt. 113 at 2 n.1. Its recommendation that the Court has no personal jurisdiction over Slavitt is similarly correct. Dkt. 113 at 20-21. And the M&R's alternative holding that "Plaintiffs' failure to allege that [Slavitt's] actions were motivated by racial animus dooms their § 1985(3) claims," Dkt. 113 at 20 n.10, is both correct and compelled by directly controlling Fifth Circuit law. But the Magistrate Judge also concluded that the Plaintiffs have standing to pursue their claims against Slavitt in his individual capacity. Dkt. 113 at 16 (§ A.3.d.). Slavitt respectfully submits that this is incorrect for the reasons stated below and in Slavitt's motion to dismiss and reply in support thereof. Dkts. 88, 106.

Moreover, that holding was unnecessary in light of the Magistrate Judge's correct conclusion that the Court has no personal jurisdiction over the claims against Slavitt. Slavitt respectfully submits that the Magistrate Judge could have, and should have, dismissed all claims against Slavitt for want of personal jurisdiction without reaching the question of standing. *See Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 100 (5th Cir. 2018) (the district court has discretion to reach personal jurisdiction first and decline to rule on subject matter jurisdiction when the subject-matter "jurisdictional issue is 'difficult

to determine' and "the issue[] of personal jurisdiction" is "relatively 'less burdensome'" (quoting *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 436 (2007))).

Slavitt therefore objects to § A.3.d. of the M&R and requests that this Court reverse the holding of that section, or alternatively that the Court simply adopt the M&R in part, excising that portion and declining to reach the question of the Plaintiffs' standing to sue Slavitt. Nonetheless, the M&R's recommendation on personal jurisdiction is correct, should be adopted, and this case dismissed against Slavitt.

## I.      Plaintiffs lack standing under *Murthy v. Missouri.*

Just last year, the Supreme Court analyzed standing in a case of alleged social-media coercion by the United States government. *See generally Murthy v. Missouri*, 603 U.S. 43 (2024). There, the Court held that the plaintiffs lacked standing because of a lack of "any concrete link between [plaintiffs'] injuries and the defendants' conduct." *Id.* at 76. Many of the principles discussed in *Murthy* apply here and mean that Plaintiffs lack standing against Slavitt for their claims.

To establish standing, a plaintiff must show an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Id.* at 57 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Traceability is lacking here. "[I]t is a bedrock principle that a federal court cannot redress injury that results from the independent action of some third party not before the court." *Murthy*, 603 U.S. at 57 (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976)).

Plaintiffs cannot establish any traceability of their alleged injuries to Slavitt because they do not allege that Slavitt engaged in the type of threats that could have created this injury absent the social media companies' independent judgment. Indeed, there is no allegation that he made any express threats. Plaintiffs interpret his statement that "Internally we have been considering our options on what to do about it"—referring to Facebook's failure to take down content not violative of its preexisting rules—as an implicit threat. FAC ¶ 148. The M&R appears to accept this characterization, basing its holding in part on "Slavitt's coercive communications." Dkt. 113 at 16.

That is too great an inferential leap to be plausible for such a broad alleged statement, particularly where Plaintiffs own allegations show that Facebook independently decided to take enforcement action on its users. Plaintiffs' pleading quotes Facebook CEO Mark Zuckerberg's August 2024 statement that "Ultimately, it was our decision whether or not to take content down, and we own our decisions . . . ." Dkt. 42 ¶ 334. Whether or not there was any government "pressure" is irrelevant. The Supreme Court expressly held in *National Rifle Association of America v. Vullo*, 602 U.S. 175, 187 (2024), that a government official may "share her views freely and criticize particular beliefs, and she can do so *forcefully* in the hopes of persuading others to follow her lead," all without violating the First Amendment. *Id.* at 188 (emphasis added). The operative issue is whether Plaintiffs plausibly alleged that the government crossed the line into coercion by threatening "legal sanctions" or "enforcement actions" *Id.* at 189, 192.

Plaintiffs do not allege Slavitt had the power to take government action, nor do they allege that Facebook believed Slavitt could, let alone would, exercise power he did not

have. Indeed, Plaintiffs do not allege that Slavitt ever attempted any retribution. Instead, the gravamen of Plaintiffs' theory appears to be that once Slavitt encouraged a social media company to police misinformation, he can be held to account for any enforcement of that company's misinformation policy. The M&R largely adopts this reasoning. *See* Dkt. 113 at 16 (repeatedly relying on the allegation that "Slavitt pressured platforms to censor"). But *Murthy* makes clear that a social media company's enforcement actions "in keeping with its own content-moderation policy" are not traceable to the government even assuming a governmental pressure campaign was underway. 603 U.S. at 70. And *Vullo* holds that "[t]he government can say what it wishes and select the views that it wants to express." 602 U.S. at 187. Plaintiffs have not plausibly alleged that the content moderation decisions were driven by Slavitt's coercive influence (or any government coercive influence) rather than "the platforms' independent content moderation." *Murthy*, 603 U.S. at 73.

Moderation "in accordance with . . . policies" cannot be attributed to Slavitt when the policies are industry wide and preexisted his time in office. FAC ¶¶ 373. And, like in *Murthy*, the allegations show that the companies repeatedly declined government requests to remove content and "consulted with outside experts," in addition to the government. *Murthy*, 603 U.S. at 60; *see* FAC ¶¶ 127, 179, 221, 305. Both are indicia that "the platforms continued to exercise their independent judgment." *Murthy*, 603 U.S. at 60.

Plaintiffs put an implausibly narrow gloss on *Murthy*. They claim its holding "rested in large part on the fact that some of the censorship occurred before the Biden Administration assumed office" whereas "the first instances of online censorship that Plaintiffs encountered occurred . . . shortly after the commencement of the Biden

Administration's censorship campaign." Response at 25. The M&R appears to accept that gloss and allow claims to proceed based on temporal coincidence alone. "At this stage, allegations that Plaintiffs' posts were removed at or near the time that Flaherty and Slavitt pressured platforms to censor such content sufficiently evinces a causal link between Flaherty's and Slavitt's actions, the platforms' censorship decisions, and Plaintiffs' harm to satisfy Article III standing." Dkt. 113 at 16.

But that does not correctly apply the reasoning of *Murthy*. The primary issue is not when plaintiffs were allegedly censored, but why the social media companies took action against their accounts. The heart of Murthy was the plaintiffs' failure to "demonstrate that each platform acted due to 'government-coerced enforcement' of its policies, rather than in its own judgment as an 'independent acto[r].'" *Murthy*, 603 U.S. at 62 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 562 (1992)). Any restriction imposed according to an independently adopted policy is definitionally not traceable to any defendant. "The whole purpose of the traceability requirement is to ensure that 'in fact, the asserted injury was the consequence of the defendants' actions,' rather than of 'the independent action' of a third party." *Id.* at 69 n.8.

Here, as in *Murthy*, timing is simply an indicator of whether a given ***policy*** could have been influenced by government coercion. In that regard, the timing that matters here is only the time a policy was adopted, not the time of each individual enforcement, since Plaintiffs complain of moderation "in accordance with" official platform policies. FAC ¶¶ 373. In that respect, the allegations here closely parallel *Murthy*. *Cf. Johnson v. Arkema, Inc.*, 685 F.3d 452, 467 (5th Cir. 2012) ("[T]emporal connection standing alone is entitled

to little weight in determining causation." (quoting *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670 (5th Cir. 1999))).

Plaintiffs have not disputed that the social media platforms had moderation policies in place prior to any government interference. FAC ¶ 127 (COVID-19 specific policies in place before Biden took office); see *Murthy*, 603 U.S. at 60 ("[T]he platforms . . . strengthened their pre-existing content moderation policies before the Government defendants got involved."). The platforms also continued to exercise their own judgment in adopting and adjusting policies after beginning consultation with the government. FAC ¶¶ 127, 179, 221, 305; *Murthy*, 603 U.S. at 60 ("[T]he platforms continued to exercise their independent judgment even after communications with the defendants began.").

An additional factor, absent in *Murthy*—several platforms allegedly enforced similar restrictions, including against Plaintiffs, in the ***absence*** of any government pressure. FAC ¶¶ 470, 610 (TikTok, Vimeo and GoFundMe); *Cf. Murthy*, 603 U.S. at 60 ("This evidence indicates that the platforms had independent incentives to moderate content."). Thus, the content moderation policies are, at least as much as in *Murthy*, the product of platforms' independent judgment. Plaintiffs' claimed injuries are thus not traceable to Slavitt, and they lack standing to maintain this suit against him.

7

## PRAYER

Defendant Andrew M. Slavitt respectfully requests that the Court engage in a *de novo* review of M&R § A.3.d., reverse the Magistrate Judge's holding in that section, and hold instead that the Plaintiffs lack standing to pursue any claim against Slavitt. Slavitt submits that the Court should then dismiss the claims against him with prejudice. In the alternative, Slavitt requests that the Court decline to reach the issue of standing and adopt the M&R in part, excising § A.3.d. while still granting the motion to dismiss for lack of personal jurisdiction, as the Magistrate Judge aptly recommended.[1] In all events, the Court should adopt the Magistrate Judge's M&R to the extent it grants the motion to dismiss for lack of personal jurisdiction and denies Plaintiffs' motion for jurisdictional discovery.

Respectfully submitted,

/s/ Theodore J. Boutrous, Jr.
Theodore J. Boutrous Jr.
**Attorney in Charge**
Admitted *pro hac vice*
Michael H. Dore
Admitted *pro hac vice*
**GIBSON, DUNN & CRUTCHER LLP**
333 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 229-7000

---

[1] Slavitt notes that the Magistrate Judge did not reach of his alternative arguments under Rule 12(b)(6). Slavitt reserves all rights to continue pressing these claims as necessary in this Court or on appeal but observes that the Magistrate Judge rightly chose not to rule on merits grounds for dismissal once it determined that it lacked personal jurisdiction over the defendants. "[S]ubject matter jurisdiction and personal jurisdiction claims are 'threshold grounds for denying audience to a case on the merits,' and require that the courts reach the threshold claims before reaching claims on the merits." *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999)). Nevertheless, footnote ten correctly states binding law and should be adopted **as an alternative holding**. Dkt. 113 at 25 n.10

Facsimile: (213) 229- 7520
tboutrous@gibsondunn.com
mdore@gibsondunn.com

Eva M. Guzman
Texas Bar No. 00000097
Raffi Melkonian
Texas Bar No. 24090587
Michael Adams-Hurta
Texas Bar No. 24097860
**WRIGHT CLOSE BARGER & GUZMAN, LLP**
One Riverway, Suite 2200
Houston, Texas 77056
Telephone: (713) 572- 4321
Facsimile: (713) 572- 4320
guzman@wrightclosebarger.com
melkonian@wrightclosebarger.com
hurta@wrightclosebarger.com

## CERTIFICATE OF SERVICE

I certify that on January 9, 2026, a true and correct copy of the foregoing was filed with the United States District Clerk for the Southern District of Texas and electronically served on all counsel of record via the District's ECF system.

/s/ Theodore J. Boutrous, Jr.
Theodore J. Boutrous Jr.